| | | |
|---|---|---|
| MICHELLE PARKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1869 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Parkinson brings this action against 26 named defendants and 1,000 unidentified defendants for a range of claims that all stem from a foreclosure action in August 2015. The foreclosure action was filed by PNC Bank, N.A. (PNC) in Cook County Circuit Court, but was voluntarily dismissed after Parkinson and PNC reached an agreement to modify her loan. Parkinson nonetheless continued to litigate counterclaims against PNC in state court, which were eventually decided in favor of PNC. Parkinson now alleges that PNC conspired with other defendants—including PNC's attorneys, the Cook County judge that adjudicated her counterclaims, and the Clerk of the Cook County Circuit Court—to file a fraudulent foreclosure action against her and deprive her of the right to litigate her counterclaims. The Defendants all move to dismiss Parkinson's Complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and also seek dismissal on other grounds. For the reasons discussed below, the Court grants the Defendants' motions and dismisses Parkinson's Complaint in its entirety.

## I. Background

The 63 pages and 540 paragraphs of the Complaint are not easy to understand. The Complaint lacks any apparent chronological or thematic organization, and it repeats section headings, incorrectly numbers paragraphs, and makes difficult-to-follow legal arguments. When factual allegations are made, they are confusingly worded and difficult to comprehend. This is on top of 22 exhibits Parkinson attached to her Complaint. But as far as it is possible to discern Parkinson's factual allegations, the Court accepts them as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Parkinson is a Chicago resident who lives in her home at 5646 West Eastwood. R. 1, Compl. ¶ 21; *Id.*, Exh. 1, Foreclosure Compl. ¶ 3(I)(2).[1] Parkinson received a mortgage loan when she purchased her home, which was eventually serviced by PNC. Foreclosure Compl. ¶ 3(N). In March 2015, Parkinson began a process to modify the terms of her loan. R. 105.3, Third Am. Counterclaims ¶ 7. But it did not take long for a disagreement to arise between Parkinson and PNC over what documentation Parkinson was required to submit in order to complete the loan modification. *Id.* ¶¶ 14-17. Parkinson also alleges—as best as the Court can understand—that PNC did not provide her enough time to respond to its modification offer. *Id.* ¶¶ 21, 101-111.

In August 2015, PNC filed a foreclosure complaint in Cook County Circuit Court against Parkinson. Foreclosure Compl. PNC filed the complaint in the Chancery Division of Cook County Circuit Court through its law firm, Anselmo,

---

[1]Citations to the docket are indicated by "R." followed by the docket entry and page or paragraph number.

Lindberg, Oliver, LLC (Anselmo Lindberg), which in turn reached out to ATG Legal Serve Inc. (ATG) to serve the complaint on Parkinson. R. 105, ATG Br. at 3. ATG was unable to serve Parkinson, despite numerous attempts. *Id*; *see also* R. 1, Exh. 11, Pryor Aff. Meanwhile, Parkinson continued to work with PNC to modify her loan under Illinois' Hardest Hit Program. R. 122, PNC Br. at 3. She signed a trial modification in December 2015 and a permanent modification in March 2016. Third. Am. Counterclaims ¶ 103. In light of the modification, on April 5, 2016, the foreclosure action was dismissed without prejudice. R. 105.4, 4/5/16 Dismissal Order.

At some point after the dismissal, Parkinson filed counterclaims against PNC and the case was transferred to Judge Catherine Schneider in the Municipal Division of Cook County Circuit Court.[2] Third Am. Counterclaims; 10/26/16 Transfer Order. On August 28, 2017, Parkinson filed a Third Amended Counter-Complaint, which included thirteen counterclaims against PNC and its agents for: breach of contract, unjust enrichment, common law fraud, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), the Dodd-Frank Act (Dodd-Frank), and the Fair Debt Collections Practices Act (FDCPA). Third Am. Counterclaims at 2-26.

---

[2]Based on the Court's review, the record does not state when Parkinson first filed her counterclaims. All parties cite to Parkinson's Third Amended Verified Counter-Complaint, filed on August 28, 2017. Third Am. Counterclaims. But it is clear that the counterclaims were filed at some point after the foreclosure action was dismissed—PNC's motion to dismiss the foreclosure action states that there were no known counterclaims at the time, R. 142.1, PNC Mtn. Dismiss—but before October 2016—when the case was transferred out of the Chancery Division, R. 145.1, 10/26/16 Transfer Order.

Throughout the filing, Parkinson accused PNC of making misrepresentations and inaccurate statements,[3] incorrectly denying her loan modification,[4] continuing foreclosure proceedings and charging fees after her modification was implemented,[5] ordering excessive property inspections,[6] breaching the parties' agreements,[7] overvaluing her home,[8] overcharging her interest,[9] invading her privacy,[10] and aiding stalkers.[11] She also alleged that PNC's process server—Scott Pryor of ATG—impermissibly attempted to serve her with the foreclosure action after the loan modification was implemented, that his attempts were excessive, and that she was forced to pay unwarranted fees for those attempts. Third Am. Counterclaims ¶¶ 124-

---

[3]*See, e.g.*, Third. Am. Counterclaims ¶ 15 ("The representations mentioned above were false when Counter-Defendant made them."); *id.* ¶ 19 ("Counter-Defendant made the representations mentioned above with the intent and for the purpose of deceiving Counter-Plaintiff and to induce Counter-Plaintiff into relying on the representations.").

[4]*See, e.g.*, *id.* ¶ 21 ("That despite receiving the documents the Counter-Defendant denied the modification because the Counter-Plaintiff failed to complete the application timely."); *id.* ¶ 23 ("That PNC incorrectly denied the modification based on inaccurate information that they used as a guideline when they reviewed and denied the Counter-Plaintiff's modification.").

[5]*See, e.g.*, *id.* ¶ 156 ("Despite notice that the debt was disputed and the amount the debt collector was trying to collect was wrong, the Counter-Defendant persisted in trying to collect the debt."); *id.* ¶ 159 ("Counter-Defendant continues to add foreclosure fees, interest and attorney fees to Counter-Plaintiff mortgage."); *id.* ¶ 171 ("That the Counter-Defendant not only began foreclosure proceeding but continued them after even after a TPP Modification was received by them.").

[6]*See, e.g.*, *id.* ¶ 70 ("PNC Bank, NA charged Counter-Plaintiff for these excessively frequent and unnecessary property inspections.").

[7]*See, e.g.*, *id.* ¶ 45 ("By initiating and continuing foreclosure proceedings, Counter-Defendant breached the contract."); *id.* ¶ 75 ("[T]he terms of the mortgage contracts [were] subject to PNC Bank, NA's implied duty of good faith and fair dealing.").

[8]*See, e.g.*, *id.* ¶ 88 ("That the valuation of the property should have been $218,000 Two Hundred Eighteen Thousand Dollars and Zero Cents or less, instead of the $360,184 used by the Counter Defendant.").

[9]*See, e.g.*, *id.* ¶ 145 ("That the Counter-Defendant actions constituted misstating the annual percent rate or finance change in violation of Illinois law.").

[10]*See, e.g.*, *id.* ¶ 27(e)-(h); *id.* ¶ 46(g)-(m).

[11]*See, e.g.*, *id.* ¶ 27(h) ("Stalkers being able to look at information as it is public information.").

138. Finally, Parkinson accused Anselmo Lindberg—the law firm representing PNC—of violating the FDCPA. *See e.g.*, *Id.* ¶ 167 ("Anselmo, Lindberg Oliver's alleged misconduct stems from its debt collection activities [on] behalf of PNC Bank, NA and is therefore not immune from liability."). Parkinson sought a number of remedies for her alleged injuries, including a declaration that PNC breached its covenant of good faith and fair dealing, an order "to impound the foreclosure," an injunction preventing PNC and its agents from charging her any additional fees, out-of-pocket damages, statutory damages, litigation costs, and post-judgment collection costs. *Id.* at 24. For damages, she specifically requested an award totaling "twice the loan contract amount." *Id.*

PNC moved to dismiss some of Parkinson's counts and sought summary judgment on the rest. ATG Br. at 4. Judge Schneider granted PNC's motion in its entirety on December 14, 2017, thus ending the action. R. 1, Exh. 22, 12/14/17 Order. Parkinson did not appeal the final order ending the case. *See* R. 1, Compl.

Parkinson now brings 34 counts against 26 named defendants (the Defendants) and 1,000 unidentified Doe Defendants. Compl. It is possible to organize the Defendants into three overarching groups: (1) Judge Schneider; (2) Dorothy Brown, Clerk of the Circuit Court of Cook County, Cook County, and other unnamed Cook County court employees; and (3) PNC, ATG, and Anselmo Lindberg.[12]

---

[12]Parkinson also named individual employees of these three entities, who are included in this last group of defendants. From PNC, Parkinson named: William S. Demchak, Sarah T. Greggerson, Christina Cottrell, and Amy Toller. Compl. ¶¶ 24, 25. From ATG, she named: Peter Birnbaum, Kelly Ann Kienzie, Scott Pryor, Kathleen Dinunno, Nancy Porter, and Monique Reyes. *Id.* ¶¶ 27, 30, 31. From the Anselmo Lindberg firm, she named: Steven

Parkinson alleges that the Defendants conspired with one another to fraudulently collect a mortgage foreclosure debt from her using false information and misrepresentations, as well as to award "a final alleged order of summary judgment" to PNC. *See, e.g.* Compl. ¶¶ 2, 251, 300. Parkinson's Complaint includes such wide-ranging causes of action as fraud, *id.* ¶¶ 154-164; violations of the Fourth, Ninth and Tenth Amendments, *id.* ¶¶ 257-284; RICO, *id.* ¶¶ 318-328; and intentional infliction of emotional distress, *id.* ¶¶ 207-213.

All the Defendants move to dismiss Parkinson's Complaint on various grounds. R. 87, Brown Br.; ATG Br.[13]; R. 112, Schneider Br.; PNC Br.[14]; R. 125, Anselmo Lindberg Br.[15] All of them argue that this federal court lacks subject matter jurisdiction to hear Parkinson's claims under the *Rooker-Feldman* doctrine. Brown Br. at 14; ATG Br. at 4-6; Schneider Br. at 4-5; PNC Br. at 4-6; Anselmo Lindberg Br. at 2-3. They also raise other arguments, such as preclusion, judicial immunity, sovereign immunity, and failure to state a claim. All the Defendants argue Parkinson's Complaint should be dismissed in its entirety.

---

Lindberg, Thomas Anselmo, Doug Oliver, Bryan Hughes, Michael Crowe, Christopher Iaria, Michael Anselmo, Sean Jordan, Masum Patel, Susan Ward, and Tracy Bristow. *Id.* ¶¶ 34, 35.

[13]The ATG Motion was filed on behalf of Attorneys' Title Guaranty Fund, Inc., Peter Birnbaum, ATG Legal Serve, Inc., and Kelly Ann Kienzle. ATG Br. at 1. Defendants Kathleen Dinunno, Nancy Porter, and Scott Pryor moved to adopt the ATG Motion. R. 208, Dinunno and Porter Mtn; R. 212, Pryor Mtn.

[14]The PNC Motion was filed on behalf of PNC, William Demchak, Sarah Greggerson, Christina Cottrell, and Amy Toller. PNC Br. at 1.

[15]The Anselmo Lindberg Motion was filed on behalf of Anselmo Lindberg & Associates, Steven Lindberg, Thomas Anselmo, Michael Anselmo, Bryan Hughes, Michael Crowe, Christopher Iaria, Sean Joran, Masum Patel, Susan Ward and Tracy Bristow. Anselmo Lindberg Br. at 1. Defendant Doug Oliver moved to adopt the law firm's Motion. R. 131, Oliver Mtn.

## II. Legal Standard

Rule 12(b)(1) provides for dismissal of a case when the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In the context of a Rule 12(b)(1) motion, the Court accepts plaintiff's allegations as true (if no evidence is offered to the contrary), but the plaintiff bears the burden of establishing jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In deciding a motion challenging jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679. The Court must bear in mind that because

Parkinson is proceeding *pro se*, her filings are entitled to liberal construction. *Erickson*, 551 U.S. at 94. Nevertheless, even *pro se* litigants must comply with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## III. Analysis

As mentioned already, the Defendants offer a diverse array of arguments in favor of dismissal. The Court will address the arguments made by each set of Defendants in turn.

### A. Judge Schneider

Schneider first argues that this Court has no subject matter jurisdiction to hear Parkinson's claims under the *Rocker-Feldman* doctrine. Schneider Br. at 4-5. *Rooker-Feldman* bars what essentially would be appellate review of a state judgment in a federal district court. *Lance v. Dennis*, 546 U.S. 459, 464 (2006). Federal courts lack jurisdiction over these claims because "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel,* 773 F.3d 884, 885 (7th Cir. 2014). *Rooker-Feldman*, though, is a "narrow doctrine confined to cases brought by state-court losers complaining of injuries caused by state-court judgments, rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance*, 546 U.S. at 464 (cleaned up). When determining whether the doctrine applies, the pivotal question is "whether the federal plaintiff seeks the

alteration of a state court's judgment." *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018).

It is clear from the face of the Complaint that Parkinson's claims against Judge Schneider seek relief from the state court judgments and the alleged injuries caused by those judgments. Parkinson accuses Judge Schneider of knowingly and fraudulently ruling on Parkinson's counterclaims, even though Judge Schneider allegedly knew she did not have jurisdiction to do so. *See, e.g.*, Compl. ¶ 73 ("[W]hen Defendant Schneider became aware that the state court lacked jurisdiction she still issued an alleged order in favor of Defendant PNC; granting them summary judgment, dismissing Plaintiffs counter-claim with prejudice and striking Plaintiff's affidavit…"). Parkinson's requested relief—a declaration that Judge Schneider acted unconstitutionally and without jurisdiction—is a direct challenge to Judge Schneider's dismissal of Parkinson's counterclaims. *Rooker-Feldman* bars this Court from sitting, in effect, as the Illinois Appellate Court. *Taylor v. Federal Nat'l Morg. Ass'n*, 374 F.3d 529, 534 (7th Cir. 2005) (cited by *Dawaji v. Askar*, 618 F. App'x 858, 860 (7th Cir. 2015) ("*Rooker-Feldman* applies for the additional reason that despite [the plaintiff's] assertions to the contrary, the relief she seeks would require that we nullify the state-court judgment) (non-precedential disposition)); *see also Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825-26 (7th Cir. 1999).

Parkinson's allegations about Judge Schneider's conduct during the litigation—as opposed to the allegations about Judge Schneider's decision itself—do not undermine this conclusion. *See, e.g.*, Compl. ¶ 113 ("Prior to Defendant Schneider

ruling [*sic*] on Defendant's PNC behalf she stated on two separate occasions, 'I thought we had disposed of this case.'"), ¶ 123 ("Defendant Schneider did not want to rule on the case on 10-16-17 because the courtroom was full [of] litigants on that day."). In *Sykes v. Cook County Circuit Court Probate Division*, the plaintiff asserted that her Americans with Disabilities Act claims in federal court were independent from the state judge's order denying the plaintiff's motion for reasonable accommodations, because they focused on the state judge's wrongful conduct—interrogating the plaintiff about her service dog and banning the dog from the courtroom. 837 F.3d 736, 742 (7th Cir. 2016). Even though the judge's conduct preceded the order, the Seventh Circuit still barred the claims under *Rooker-Feldman*, because "[i]f the judge violated the ADA by engaging in impermissible questioning or wrongly banning [the dog] from her courtroom, those alleged violations were also the basis of her order." *Id.* at 743.

Nor does it matter that Parkinson has couched her allegations against Schneider in claims of fraud and violations of the Constitution. *See e.g.*, Compl. ¶¶ 154-158 (Count One: § 1983 Claim for Fraud against all defendants); *id.* ¶¶ 168-176 (Count Four: § 1983 Claim for Retaliation for Exercise of First Amendment Rights against Judge Schneider); *id.* ¶¶ 232-256 (Count Nine: Civil Conspiracy against all defendants). *Rooker-Feldman* applies with equal force even when a state court judgment is allegedly erroneous or unconstitutional. *Long*, 182 F.3d at 555*; see also Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204-205 (7th Cir. 2011) (explaining that litigants cannot "circumvent the Rooker-Feldman doctrine by recasting a request

for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations.") (non-precedential disposition).

And there is no fraud exception to the *Rooker-Feldman* doctrine. *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015). This is because the doctrine is "concerned not with *why* a state court's judgment might be mistaken (fraud is one such reason; there are many others) but with *which federal court* is authorized to intervene." *Id.* (emphasis in original). Indeed, there is no way to separate Parkinson's claims of conspiracy and fraud from the state court judgment. The civil conspiracy that Parkinson describes *is* the state litigation itself. She claims that PNC, ATG, the Anselmo Lindberg firm, Judge Schneider, Brown, and other Cook County Circuit Court employees all conspired to litigate a fraudulent foreclosure action against her, charge her excessive fees, and dismiss her counterclaims, despite an absence of jurisdiction. These allegations ultimately challenge the state court decision against her, and thus are barred by *Rooker-Feldman*.

In sum, Parkinson could have appealed Judge Schneider's ruling in state court if she felt the judge mishandled her case, but she cannot now pursue claims in federal court that seek to reverse Judge Schneider's order. All claims against Judge Schneider must be dismissed for lack of subject matter jurisdiction.

Even if the Court had subject-matter jurisdiction over these claims though, dismissal is still appropriate because Judge Schneider is protected by absolute judicial immunity. *See* Schneider Br. at 5-6. It is a well-established principle that judges "are not liable to civil actions for their judicial acts." *Stump v. Sparkman*, 435

U.S. 349, 356 (1978) (cleaned up).[16] Indeed, it is rare that a judge would ever be liable for actions taken in her judicial capacity, and she "will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability only when [she] has acted in the clear absence of all jurisdiction." *Id.* at 356-57 (cleaned up).

Despite Parkinson's repeated assertions that Judge Schneider acted without jurisdiction, there is no allegation or any other reason offered to think that is right. *Stump*, 435 U.S. at 357 n.7 (explaining that clear absence of jurisdiction would be akin to a probate judge trying a criminal case, but not a criminal judge convicting a defendant of a nonexistent crime); *see also John v. Barron*, 897 F. 2d 1387, 1392 (7th Cir. 1990) ("Judicial Immunity is a defense so long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction."). Parkinson has not offered any reason to believe that Judge Schneider—who was assigned to the Municipal Division of the Cook County Circuit Court—was not authorized to hear Parkinson's counterclaims. So, in the alternative, Judge Schneider would be dismissed from the case due to judicial immunity.[17]

---

[16]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[17]Because the claims against Judge Schneider are barred by *Rooker-Feldman* and absolute judicial immunity, the Court does not reach Judge Schneider's alternative arguments that (1) the Eleventh Amendment bars the official capacity claims; (2) Schneider's allegations against her do not adequately state a claim for relief under federal pleading standards; and (3) sovereign immunity bars Schneider's state-law claims. Schneider Br. at 5, 7-9.

**B. Dorothy Brown, Cook County, and Employees of the Circuit Court**

The Court will again begin its analysis with *Rooker-Feldman*, because it presents a threshold question of subject matter jurisdiction. *See* Brown Br. at 14. As previously explained, most of Parkinson's allegations pertain to improprieties in the state court litigation, and the relief sought is designed to overturn the dismissal of Parkinson's counterclaims. Specific to Brown, Cook County, and the unidentified Cook County Circuit Court employees, Parkinson accuses them of tampering with case documents, stamping documents with the wrong dates, withholding documents, and generally conspiring with one another to prevent Parkinson from successfully litigating her counterclaims. *See, e.g.* Compl. ¶¶ 77-89, 100, 131-153. She further alleges that they exhibited "deliberate indifference to [her] Constitutional rights," *id.* ¶ 159; were "knowingly [*sic*] participants in the fraud on the court," *id.* ¶ 187; and that their behavior "influenced Defendant Schneider and the judicial machinery in such a way that the impartial functions of the court have been directly corrupted," *id.* ¶ 202.

Although these allegations do not directly mention Judge Schneider's ruling, they do challenge it, because Parkinson is trying to recover for injuries allegedly arising from the state judgment. "If a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of injury for *Rooker-Feldman* purposes." *Dawaji*, 618 F. App'x at 859 (non-precedential disposition); *see also Harold,* 773 F.3d at 885-86 (applying the *Rooker–Feldman* doctrine, reasoning that when false statements to a state court produce an adverse

decision, "the state court's judgment is the source of the injury of which plaintiffs complain in federal court"). Here, Parkinson's injuries arise from the state court dismissal of her counterclaims. Put another way, if Judge Schneider had ruled in favor of Parkinson on those claims, then there would be no injury arising from the alleged Cook County Circuit Court fraud. These allegations fall squarely within *Rooker-Feldman* and there is no subject matter jurisdiction over them.

In the alternative, the allegations against Brown, Cook County, and the other Cook County Circuit Court employees fail for the additional and independent reason that Parkinson has failed to state a claim against them. Parkinson's accusations that Brown and her deputy clerks conspired with PNC and other private companies to deprive Parkinson of her day in court are simply implausible, nor are the allegations specific enough to satisfy Federal Rule of Civil Procedure 9(b). To begin with, Parkinson is unable to name the Cook County Circuit Court employees—outside of Brown—who were involved in the alleged scheme. *See, e.g.*, Compl. ¶¶ 42, 43, 51. Second, the bulk of her allegations are not actionable, as she primarily complains of clerical errors and a potentially outdated state court system where documents are kept only in hard copy. *See, e.g.*, *id.* ¶ 187 ("Documents that showed this fraud on its face were hidden in the official court files, with some being marked 'image not available.'"). Finally, she does not allege any communications or interactions between the members of the alleged conspiracy. Her allegations that Cook County employees are complicit in a plan to stalk her—or are potentially stalking her themselves (the Complaint is unclear on the affiliation of the alleged stalkers)—are based on no

*factual* allegations. *See e.g.*, *id.* ¶¶ 125-130, 257-269. Aside from the lack of subject matter jurisdiction, these Defendants would be dismissed from the case for failure to state a claim.[18]

### C. PNC, ATG, and Anselmo Lindberg

Last but not least, the Court must turn to the allegations against PNC, ATG, and the Anselmo Lindberg law firm. Like the other Defendants, these three sets of Defendants raise a number of objections to Parkinson's Complaint. But the Court must begin by determining if it has subject matter jurisdiction over Parkinson's claims or if instead they are barred under *Rooker-Feldman*.

Parkinson's claims against PNC, ATG, and Anselmo Lindberg can be organized into two groups. First, Parkinson repeats her state court counterclaims in her Complaint, even mistakenly referring to herself as a "Counter" Plaintiff at certain points.[19] These sixteen counts—Counts Fourteen through Twenty-Six and Counts Twenty-Eight through Thirty—were all presented in Parkinson's counterclaim filing in Cook County Circuit Court, and all were either dismissed or disposed of via summary judgment by Judge Schneider. Although Parkinson does not use the words

---

[18]Because the claims against Brown are barred by *Rooker-Feldman* and also fail to state a claim, the Court does not reach Brown's alternative arguments that (1) the Eleventh Amendment bars the official capacity claims; (2) Parkinson has failed to allege individual or official capacity claims; (3) the claims against her are barred by quasi-judicial immunity; (4) the claims against her must be heard in the Illinois Court of Claims; (5) she is entitled to immunity for negligent acts; and (6) this Court should decline to hear Parkinson's state law claims. Brown Br. at 4-13.

[19]*See* Compl. ¶¶ 339-395 (Counts Fourteen – Twenty-One: Violations of FDCPA); *id.* ¶¶ 396-420 (Counts Twenty-Two – Twenty-Four: Violations of the ICFA); *id.* ¶¶ 421-424 (Count Twenty-Five: Beach of Implied Covenant of Good Faith and Fair Dealing); *id.* ¶¶ 425-435 (Count Twenty-Six: Violation of Dodd Frank); *id.* ¶¶ 444-490 (Counts Twenty-Eight – Thirty: Unjust Enrichment).

"reverse" or "overturn" in her opinion, that is what she is asking the Court to do. There is no possible way for the Court to sustain these claims without overturning Judge Schneider's ruling. So these claims are barred by *Rooker-Feldman. See Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017) ("Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine.").

Parkinson's second set of claims against PNC, ATG, and Anselmo Lindberg relate to her allegations that these Defendants conspired with each other—and others—to perpetrate fraud on the state court and derail her counterclaims.[20] She accuses these Defendants of making misrepresentations to, and conspiring with, the state court, and thereby inducing Judge Schneider to rule against her. *See, e.g.*, Compl. ¶ 71 ("Defendants had falsely represent[ed] that the Plaintiff's alleged mortgage loan was in legal proceedings, that the alleged debt was subject to the jurisdiction of state court and that PNC and ALA could legally obtain summary judgment legal fees, foreclosure fees, court fees and other relief against the Plaintiff knowing that the Defendants had no legal right to do so."); *id.* ¶¶ 197-204.

---

[20]*See* Compl. ¶¶ 154-158 (Count One: § 1983 Claim of Fraud); *id.* ¶¶ 186-206 (Count Five: Fraud upon the Court); *id.* ¶¶ 207-213 (Count Six: Intentional Infliction of Emotional Distress); *id.* ¶¶ 214-223 (Count Seven: Defamation); *id.* ¶¶ 224-231 (Count Eight: Fraudulent Process); *id.* ¶¶ 232-256 (Count Nine: Civil Conspiracy); *id.* ¶¶ 257-311 (Count Ten: Invasion of Privacy for Perpetual Gang Surveillance); *id.* ¶¶ 318-328 (Count Eleven: RICO and Wire Fraud); *id.* ¶¶ 329-336 (Count Twelve: § 1986 claim for Neglect to Prevent All Defendants); *id.* ¶¶ 337-338 (Count Thirteen: Destruction of Quality of Life); *id.* ¶¶ 436-443 (Count Twenty-Seven: Unjust Enrichment against PNC, ATG, ALA and Cook County); *id.* ¶ 491 (Count Thirty-One: Slander of Title); *id.* ¶ 492 (Count Thirty-Two: Slander of Credit); *id.* ¶¶ 493-499 (County Thirty-Three: Violation of Fair Housing Act); *id.* ¶¶ 500-506 (Count Thirty-Four: Willful and Wanton Misconduct).

Although these fifteen claims—Counts One, Five to Thirteen, Twenty-Seven, and Thirty-One to Thirty-Four—did not directly come before the state court, "*Rooker-Feldman* bars claims that *could* have been argued in state court." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1061 (7th Cir. 2018). In this context, the application of *Rooker-Feldman* "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (cleaned up). Here, Parkinson alleges that the misconduct from PNC, ATG, and Anselmo Lindberg caused Judge Schneider's decision against her, meaning the injury she seeks to remedy is the decision itself. *Dawaji*, 618 F. App'x at 859 ("[I]f a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of injury for Rooker-Feldman purposes.") (non-precedential disposition). Indeed, *Rooker-Feldman* bars claims alleging that "misstatements made to a state court produced a harmful judgment." *Coley v. Abell*, 682 F. App'x 476, 478 (7th Cir. 2017) (non-precedential disposition). That is what Parkinson has alleged in these fifteen claims, so they too are barred under the doctrine.

Even so, Parkinson's claims against PNC, ATG, and Anselmo Lindberg are also barred under the doctrine of *res judicata*, that is, claim preclusion. This doctrine prohibits parties from relitigating issues that were decided, or *could have been* raised, in a prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Because the first action was adjudicated by an Illinois state court, the Court looks to

Illinois law to determine its preclusive effect. *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005). The Full Faith and Credit Act instructs federal courts to give state court judgments the same preclusive effect they would have in state court. *Licari v. City of Chi.*, 298 F.3d 664, 666–67 (7th Cir. 2002). In Illinois, "[w]hen *res judicata* is established as a bar against the prosecution of a second action between the same parties upon the same claim or demand it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose." *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001). *Res judicata* applies where: (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of parties or their privies; and (3) there is an identity of causes of action. *Id.*

All three elements are met here. First, Judge Schneider entered a final judgment on the merits when she dismissed most of Parkinson's counterclaims and granted summary judgment for PNC on the rest. *Avery v. Auto-Pro., Inc.*, 731 N.E.2d 319, 322 (Ill. App. Ct. 2000) (holding that an order dismissing counterclaim was a judgment on the merits); *Sampson v. Cape Indus. Ltd.*, 593 N.E.2d 1158, 1161 (Ill. App. Ct. 1992) ("Since summary judgment was granted in favor of [the defendant], there was a final judgment on the merits"). Second, there is identity of parties or their privies. Parkinson named PNC in her counterclaims, but she also brought allegations against ATG and Anselmo Lindberg. *See* Third Am. Counterclaims ¶ 124 (identifying Scott Pryor from ATG and complaining about his attempts to serve her), ¶ 167

18

("Anselmo Lindberg Oliver's alleged misconduct stems from its debt collection activities [on] behalf of PNC Bank, NA and is therefore not immune from liability.").

Moreover, ATG and Anselmo Lindberg are in privity with PNC. "[P]rivity exists between a party to the prior suit and a nonparty when the party to the prior suit adequately represented the same legal interests of the nonparty." *Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1132 (Ill. App. Ct. 2011) (quoting *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825-26 (Ill. 1992)) (cleaned up). It is safe to assume here that PNC urged Judge Schneider to find that neither ATG nor Aneslmo Lindberg—which were PNC's agents—violated any of Parkinson's rights when they defended against Parkinson's claims that the foreclosure action violated the FDCPA, the ICFA, the Dodd-Frank Act, and other laws. And Parkinson has provided no reason to undermine this conclusion. The second element of the test is, thus, satisfied.

Finally, there is an identity of causes of action here. To begin with, Parkinson simply restates some of her counterclaims in her federal Complaint. *See* Compl., Counts Fourteen to Twenty-Six and Twenty-Eight to Thirty. No doubt there is identity regarding these claims. But there is also identity with the remaining claims under Illinois's "transactional" test: "[s]eparate claims are considered the same cause of action under *res judicata* if they arise from a single group of operative facts." *Agolf*, 946 N.E.2d at 1131. This test is easily met here. Parksinson's counterclaims and the allegations against PNC, ATG, and Anselmo Lindberg in her federal Complaint all stem from the same transaction—the foreclosure action brought in August 2015. *See*

Compl. ¶ 2 ("Defendants have uniformly engaged in a scheme of illegal and deceptive business practices that violate federal and state law in attempting to collect an alleged mortgage foreclosure debt from Plaintiff…"); R. 150, Pl. Resp. to Anselmo Lindberg Br. at 1 ("Plaintiff's Counter-Claim stems from the same illegally issued complaint number 15-CH 12248.").[21] A single group of operative facts—the Defendants' attempt to collect money owed on Parkinson's mortgage and foreclose on her home—underlie all of Parkinson's claims. The claims against PNC, ATG, and ALA are likewise barred under claim preclusion.[22]

## IV. Conclusion

For the reasons discussed, the Defendants' motions to dismiss are granted in their entirety for lack of jurisdiction under Rule 12(b)(1). Ordinarily, the Court would permit a plaintiff a chance to file an amended complaint after the dismissal of the original complaint. But here the defects go to subject matter jurisdiction, so an amendment is not likely to fix the problem (some subject matter jurisdiction flaws might be fixed with different allegations, but this is not that type of case). Also, the first complaint spanned 63 pages and 540 paragraphs, from which the Court infers that Parkinson has set forth the complete universe of allegations pertaining to her

---

[21]The foreclosure action against Parkinson was docketed in Cook County Circuit Court as 15 CH 12248. Foreclosure Compl.

[22]Because the claims against PNC, ATG, and ALA are barred by *Rooker-Feldman* and claim preclusion, the Court does not reach their alternative arguments that (1) the claims are barred under collateral estoppel; (2) ATG is protected by quasi-judicial immunity; (3) the claims are time-barred; (4) Parkinson fails to state a claim; and (5) Anselmo is protected by the Absolute Litigation Privilege. ATG Br. at 6-14; PNC Br. at 8-15; ALA Br. 4-10.

claims. A final judgment will be entered. The status hearing of April 4, 2019 is vacated.[23]

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2019

---

[23]As a final note, the Court denies Parkinson's motion [R. 230] to reconsider the adequacy of the organizational Defendants' corporate disclosures under Federal Rule of Civil Procedure 7.1 and Local Rule 3.2. The Defendants' filings are now adequate. R. 232, 236, 237.